UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
UNITED STATES OF AMERICA,

  -v-                                                    1:04-CR-245 (NAM)

JIN KYOO PARK and MYUNG WOO JUN,

          Defendants.
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

APPEARANCES:                               OF COUNSEL:

ROBERT E. MOLLOY, ESQ.
*Attorney for Defendant Park*
200 Broadway
Suite 205
Troy, New York 12180

JAMES E. LONG, ESQ.
*Attorney for Defendant Jun*
668 Central Avenue
Albany, New York 12206

GLENN T. SUDDABY                   Edward P. Grogan, Esq.
UNITED STATES ATTORNEY      Assistant U.S. Attorney
Northern District of New York
445 Broadway. Room 231
Albany, New York 12207

NORMAN A. MORDUE, DISTRICT JUDGE

**MEMORANDUM-DECISION AND ORDER**

**I.**    **INTRODUCTION**

      The indictment in this matter charged defendants Jin Kyoo Park and Myung Woo Jun with conspiracy to transport illegally aliens from South Korea to the United States for commercial advantage or financial gain, four counts each of bringing aliens illegally to the United States and four counts each of transporting aliens within the United States in violation of

18 U.S.C. § 1324.  After a jury trial, defendants were convicted of the lesser included offenses of illegally bringing/transporting four aliens to the United States, but they were acquitted of the greater offenses of having acted for commercial or financial gain.  Defendants were also acquitted of the alleged conspiracy to transport aliens for commercial or financial gain.  Both defendants move to set aside the jury verdict and/or for a new trial.

## II.    FACTUAL BACKGROUND

The facts as presented to the jury established that on April 10, 2004 defendants each were driving a black sedan on Interstate Route 87 in the vicinity of North Hudson, New York with four female passengers when they were stopped at Border Patrol checkpoint.  None of the female passengers in defendants' vehicles was legally eligible to enter or travel in the United States.  Border Patrol eventually determine that the group of eight South Korean women had crossed the border illegally from Canada and were picked up by defendants in a wooded area close to the border.

When the government filed the indictment in this case, the assigned prosecutor listed the names of the female aliens he believed were in each defendant's vehicle.  Thus, Counts 2-5 of the indictment read as follows:

> Jin Kyoo Park, knowing and in reckless disregard of the fact that the aliens named and listed below had not received prior official authorization to come to, enter, or remain in the United States, did bring to and attempted to bring to the United States from Canada the said aliens . . .
>
> Count 2:     Ae Kyung Baek
> Count 3:     Ae Ja Kim
> Count 4:     Kyung Sun Han
> Count 4:     Hyun Ock Kim

Counts 6- 9 of the Indictment are drafted in the same fashion, listing four separate aliens whom

2

defendant Jun was accused of illegally transporting. Counts 10-13 also specifically identified the same groups of four aliens each defendant was accused of bringing illegally to the United States.

At trial, the government produced ample undisputed evidence that eight specific women traveled to Canada from South Korea and this group of eight crossed the border illegally into the United States where they were picked up and transported by defendants. It was undisputed that there were two cars and eight women involved and that four women rode in each car. However, the government did not produce any evidence regarding which of the eight women were in defendant Park's vehicle and which were in defendant Jun's. The government proved that each defendant transported four of eight illegal aliens within the United States, but did not prove which four rode in either vehicle. Counsel for the government acknowledged that the inclusion in the indictment of the names of four specific women in each defendant's vehicle was based on early information that later could not be verified. The government, however, did not move to amend the indictment and proceeded to verdict on criminal counts which specifically identified the aliens each defendant was charged with transporting.

### III.  DISCUSSION

The post trial motions by defendants in this case center on one issue - was the government required to present evidence, consistent with the manner in which it drafted the indictment in this case, concerning which of the eight illegal aliens transported by defendants in this case were in each defendant's vehicle? Defendants contend that the government's failure to prove the identities of the aliens in each defendants' car as set forth in the indictment represented constructive amendment of the indictment. The government argues that there was

no constructive amendment of the indictment since proving the identities of the specific aliens transported by defendants was not an essential element of its burden of proof. When the jury asked in the early stages of jury deliberations whether it was required to determine which women were in each defendant's vehicle, the Court resolved the question in the government's favor, instructing the jury that the names of the aliens were not essential elements of the offense of alien smuggling.

Review of case law in this Circuit reveals no clear answer to the question posed herein. To be sure, the Second Circuit has definitively held that "a constructive amendment occurs when the government's presentation of evidence and the district court's jury instructions combine to modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury. *United States v. Vebeliunas*, 76 F.3d 1283, 1290 (2d Cir. 1996). "To prevail on a constructive amendment claim, a defendant must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that , upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." *United States v. Frank*, 156 F.3d 332, 337 (2d Cir. 1998). "Constructive amendments are *per se* violations of the Fifth Amendment that require reversal even without a showing of prejudice to the defendant." *Vebeliunas*, 76 F.3d at 1290.

However, "constructive amendment occurs only when the proof or the jury charge modifies an *essential element* of the offense charged." *United States v. Mucciante*, 21 F.3d 1228, 1234-35 (2d Cir. 1994) (emphasis in original). In *Mucciante,* the appellant argued that his indictment had been drawn with specificity so as to restrict the government to proving that

4

he had defrauded a specific person named Berger with counterfeit Australian bonds. The Second Circuit concluded that counterfeit bond statute did not require the government to identify and prove that a particular person in the chain of distribution was, in fact, defrauded. Thus, even if the court "read the indictment to specify Berger as a victim, contrary evidence adduced at trial would not modify an 'essential element' of the crime." 21 F.3d at 1235.

The parties herein disagree about whether the names of the aliens in each defendant's vehicle is an "essential element" of the charges of alien smuggling as set forth in the indictment. To be sure, the government should have amended the indictment in this case to reflect accurately the proof it ultimately presented to the jury. However, short of proof that the government misled defendants by including the names of the smuggled aliens in the indictment, the Court finds the error in this case to be harmless. The Ninth Circuit has specifically held that the names of illegal aliens alleged to have been smuggled is "surplusage" in an indictment not requiring proof. *United States v. Powell,* 498 F.2d 890, 892 (9th Cir. 1974). Indeed, the court found that "[n]othing in the statute requires identification by name . . . and the names add nothing to the proof of the elements of the crime." *Id.* Similarly, in *United States v. Robles-Vertiz*, 155 F.3d 725, 729 (5th Cir. 1998), the defendant was charged with illegally transporting a specific female alien named Monica Ramirez-Sanchez. At trial, the government adduced proof that the smuggled alien's name was actually Monica Martinez-Salazar. The Court found that the change in names did not reflect a change in the alleged conduct and declined to make a finding of constructive amendment. *See id.* To wit:

> The key inquiry is whether the defendant was convicted of the same conduct for which he was indicted. This test is met here. There is no suggestion that the government's mistake resulted from anything but cacography or carelessness in transcription. Nor is there any

>indication that the discrepancy enabled the government to obtain an indictment for conduct different from what it proved. The error constituted nothing more than a harmless, immaterial variance that did nothing to prejudice Robles-Vertiz's substantial rights. As we explained in [*United States v.*] *Robinson,* 974 F.2d [575] at 578 [5th Cir. 1992], a variance is material when it prejudices substantial rights, either by surprising the defendant at trial or by exposing him to risk of double jeopardy. Robles-Vertiz could not have been confused as to the events that formed the basis for the indictment, nor has he shown how the error hampered him in preparing a defense. he was aware of which person the government intended to identify in the indictment, and of the precise set of facts that formed the basis of the charge.

155 F.3d at 729.

In the present case, the indictment charged defendants with agreeing to pick up a group of eight women at or near the northern border of the United States and then driving to the agreed upon location to meet and transport them to New York City. The indictment further and unnecessarily alleged that defendant Park transported four of these aliens - namely Ae Kyung Baek, Ae Ja Kim, Kyung Sun Han, and Hyun Ock Kim - and defendant Jun transported the other four. The variance in the proof presented by the government at trial amounts to the following: defendants agreed to pick up a group of eight women at or near the northern border of the United States and then drove to the agreed upon location to meet and transport them to New York City. Of the eight women identified by name in the indictment, defendant Park transported four and defendant Jun transported the other four. This Court can discern no evident "broadening" of the theory upon which the government prosecuted this case at trial. *See United States v. Robles-Vertiz,* 155 F.3d at 729 ("Were Monica Ramirez-Sanchez a person involved in [defendant's] smuggling scheme, the would be a different case. That is because the indictment would have been broadened – the prosecution could have secured a conviction by

6

proving the smuggling of either woman.  In that circumstance, the government would be prosecuting a theory that it had not presented to the grand jury.")  Defense counsel argue in conclusory fashion that their trial strategy was impacted by a desire not to bring to the government's attention the error in identifying specific aliens with each defendant in the indictment.  In the absence of factual proof of such a claim, however, the Court cannot seriously consider it.

## IV.  CONCLUSION

Based on the foregoing, defendants' motions to set aside the verdict and/or for a new trial are hereby DENIED.

IT IS SO ORDERED.

Dated: August 8, 2005

Syracuse, New York

Norman A. Mordue
U.S. District Judge